## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | |
| | : | **Chapter 13** |
| HAY PHAT, | : | |
| | : | **Bankruptcy No.: 19-10939-AMC** |
| | : | |
| DEBTOR | : | |
| ——————————————: | | |
| | : | |
| TING CHEN & MAILY LAI, | : | |
| | : | |
| PLAINTIFFS | : | |
| | : | |
| V. | : | **Adv. Pro. No. 19-00123-AMC** |
| | : | |
| HAY PHAT, | : | |
| | : | |
| DEFENDANT | : | |
| ——————————————: | | |

Ashely M. Chan, United States Bankruptcy Judge

**OPINION**

### I.    INTRODUCTION

In this adversary proceeding, the plaintiffs, Ting Chen and Maily Lai (collectively "Plaintiffs"), seek to have this Court determine that the unpaid amount of $60,000.00 owed to them under a settlement agreement with the Debtor, Hay Phat a/k/a Payne Keang Lim ("Debtor"), is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Debtor opposes such relief. Based upon the evidence submitted to the Court, the Court concludes that the Debtor's obligation to the Plaintiffs is dischargeable.

### II.    FACTUAL BACKGROUND

Plaintiff Chen was born in Laos, while Debtor Payne Keang Lim was born in Cambodia. Case No. 19-00123 E.C.F. No. ("E.C.F.") 20, Resp. Mot. to Dismiss Am. Compl. 3.  Both are

members of a tightly knit Asian community consisting of Laotian and Cambodian families.
E.C.F. 16, Compl. ¶ 6(B). The Debtor and Plaintiff Chen have known each other for ten years.
E.C.F. 16, Compl. ¶ 6(C). They had been close friends for approximately four years and have a
history of gambling together. *Id.*; E.C.F. 43, Tr. of Trial 46:1-5. Debtor had a gambling addiction
and confessed, "[e]very time [he went] to the casino [he] couldn't help [him]self." Tr. of Trial
33:13-17, 35:18-19. Debtor has sought help for his gambling addiction and claims that he is no
longer an avid gambler. *Id.* at 44:13-16.

On five different dates, starting October 29, 2013, and ending on February 15, 2016,
Debtor borrowed various sums of money totaling $120,000.00 from Plaintiffs. E.C.F. 16, Compl.
¶ 6(E). Debtor paid Plaintiffs interest on such loans of $1,700.00 a month for a period of four
years. E.C.F. 43, Tr. of Trial 32:23-33:15. The loans were made on a cash-basis, and there was
no formal repayment plan. *Id.* at 33:2-7. Ultimately, on October 14, 2017, the Debtor executed
and delivered to Plaintiffs an Installment Judgment Note and Disclosure and Waiver in
connection with these loans. E.C.F. 16, Ex. 3. The Installment Judgment Note required the
Debtor to make twelve consecutive monthly payments beginning thirty days after October 14,
2017, in the amount of $10,550.00 each month. E.C.F. 16, Ex. 3 p.1.

The Debtor failed to make any payments due on the Installment Judgment Note. E.C.F.
16, Compl. ¶ 6(H). On February 15, 2018, Plaintiffs filed a complaint in confession of judgment
against Debtor in the Court of Common Pleas of Philadelphia County at February Term, 2018,
No. 1431. *Id.* at ¶ 6(I); E.C.F. 24, Ans. ¶ 6(I). Plaintiffs confessed judgment against Debtor in
the amount of $146,165.00. E.C.F. 16, Compl. ¶ 6(I); E.C.F. 24, Ans. ¶ 6(I). On June 6, 2018,
Plaintiffs and Debtor entered into a settlement agreement ("Agreement") to settle the confession
of judgment action for $60,000.00. E.C.F. 16, Ex. 1. The Agreement includes a forbearance

provision releasing Debtor from the judgment in exchange for his compliance with the terms of the Agreement ("Forbearance Provision"). E.C.F. 16, Compl. Ex. 1 ¶ 2(c)-(d). The Agreement required an initial payment of $5,000.00 within thirty days of the date of the execution of the Agreement and monthly payments of $500.00 commencing August 1, 2018, with the final payment to be made on or before October 1, 2027. *Id.* at ¶ 2(a)(1)-(2). As a condition of the Agreement, Debtor executed a mortgage in the principal sum of $60,000.00 in favor of the Plaintiffs on his personal residence located at 1806 E. Allegheny Avenue, Philadelphia, PA ("the Property"). E.C.F. 16, Ex. 2. Plaintiffs recorded the mortgage in the Philadelphia County Recorder of Deeds at Doc ID 53381223. *Id.* at 3. Based on the Agreement, Plaintiffs marked their action against Debtor in the Court of Common Pleas of Philadelphia County settled, discontinued, and ended. E.C.F. 16, Compl. ¶ 6(L).

On July 5, 2018, the Debtor delivered the initial payment to his attorney in the form of a check in the amount of $5,000.00 ("Initial Check") which was tendered to the Plaintiffs in an attempt to meet the terms of the Agreement. E.C.F. 16 Ex. 5; E.C.F. 43, Tr. of Trial 14:3-12. Debtor wrote the Initial Check on an account ("Account") owned by Vouch P. Chhor, Debtor's wife, residing in the Property. E.C.F. 16, Compl. ¶ 6(O). Plaintiffs deposited the Initial Check on August 6, 2018. E.C.F. 37, Ex. 11. However, the Initial Check subsequently was returned for insufficient funds. Tr. of Trial 16:10-25. The Debtor then directed the Plaintiffs to resubmit the Initial Check, which the Plaintiffs did on August 8, 2018, but the Initial Check was dishonored again for a second time. E.C.F. 37, Ex. 11. When asked why Debtor did not have sufficient funds in the Account to cover the Initial Check, the Debtor claimed that, because his wife was told that Plaintiffs were out of town, Debtor thought that Plaintiffs would not rush to the bank to deposit

the Initial Check, which would give him enough time to secure the funds for the Initial Check to clear. E.C.F. 43, Tr. of Trial 50:10-51:8.

On August 15, 2018, the Debtor tendered another check for the first monthly payment of $500.00 ("Second Check" and, collectively with the Initial Check, "Checks") from the Account, which Plaintiff Chen deposited on August 27, 2018. E.C.F. 37, Joint Pre-Tr. St. ¶ 16. However, the Second Check also was returned on August 29, 2018 for insufficient funds. E.C.F. 16, Ex. 6. The Debtor has failed to provide substitute payments for the Checks. E.C.F. 16, Compl. ¶ 6(T). Furthermore, the Debtor has failed to make any other monthly payments required under the Agreement. *Id.* at ¶ 6(U).

It is uncontested by both parties that, as of May 31, 2018, the balance in the Account was $300.00; between May 31, 2018 and June 14, 2018, $6,709.00 were deposited into the Account; and, during the same period, $4,135.13 was withdrawn from the Account. E.C.F. 37, Ex. 11. As of July 5, 2018, the balance in the Account was $597.30; between July 5, 2018 and August 28, 2010, $50,275.39.00 was deposited into the Account; and, during the same period, $51,074.33 was withdrawn from the Account. *Id.* Many deposits and withdrawals in the Account were borne out of Debtor's gambling winnings and losses. E.C.F. 43, Tr. of Trial 41:10-20. From July 5, 2018—when the Initial Check was tendered—to August 28, 2018—when the last check was returned, there were insufficient funds to cover the Initial Check of $5,000.00 on each day during this time period except July 12 and 13 and August 6, 7, and 8. E.C.F. 37, Ex. 11. However, Debtor had sufficient funds to cover the funds for the Second Check ($500.00) for thirty-nine days of the fifty-three day period. *Id.*

On February 15, 2019, the Debtor filed a petition for relief under Chapter 13 of Title 11 of the United States Code. E.C.F. 16, Compl. ¶ 6(V). On October 24, 2019, the Plaintiffs filed a

complaint against Debtor, which was amended several times, seeking a determination that the

Debtor's debt of $60,000.00 ("Debt") owed to Plaintiffs is nondischargeable under

§523(a)(2)(A) for false pretenses and false representation.[1] *See generally* E.C.F. 16 Am. Compl.

p. 1-4. Plaintiffs argue that misrepresentation or fraud occurred at the time the Debtor executed

the Agreement. E.C.F. 43, Tr. of Trial 8:18-24. The Debtor's answer to the third amended

complaint stated that the Plaintiffs waited an excessive amount of time before depositing the

Checks. E.C.F. 24, Ans. ¶ 6(P). During his direct examination at trial, which was held on

October 29, 2020, the Debtor stated that, at the time he signed the Agreement, he intended to

make the payments due thereunder. E.C.F. 43, Tr. of Trial 38:6-8. Specifically, the Debtor

claimed that he intended the deposits that were made into the Account from his gambling

winnings to cover the Checks. *Id.* at 40:7-11. The Debtor claims that, but for his gambling

addiction, he would have made the payments under the Agreement. *Id.* at 35:10-19, 49:3-8.

## III.    DISCUSSION

Plaintiffs argue that the Debtor engaged in false pretenses and false representations

within the meaning of the nondischargeability exception under § 523(a)(2)(A) when he signed

the Agreement without the intention of complying, as evidenced by the Debtor tendering the

Checks when there were insufficient funds in his Account to cover them.[2] *See* Pre-Tr. St. Pt. V

---

[1] On November 20, 2019, Debtor filed an adversary complaint against Plaintiffs in this Court at Case No. 19-00227 seeking a determination that the mortgage that Debtor entered pursuant to the Agreement is unsecured. E.C.F. 20, Resp. Mot. to Dismiss Am. Compl. ¶ 4. Debtor alleged that the $60,000.00 mortgage is unsecured because the real estate encumbered by this mortgage is (1) only worth $135,000.00 and (2) subject to a prior mortgage in the amount of $172,945.11. *Id.* at ¶ 4-5. Plaintiff argues that Debtor knew that the $60,000.00 mortgage with plaintiffs was worthless on the date it was executed. *Id.* at ¶ 5. On February 18, 2020, this Court granted the Debtor's motion for default judgment in that adversary proceeding. Case No. 19-00227 E.C.F. 9.

[2] To the extent the Plaintiffs also argue the Debt is nondischargeable on account of the Debtor tendering the Checks when there were insufficient funds in the Account to cover them, the Court must reject this argument. As discussed *infra*, under § 523(a)(2)(A), for a debt to be nondischargeable, the debtor had to have obtained specific money, property, services, or an extension, renewal, or refinancing of credit by fraud. *Fledderman v. Glunk (In re Glunk),* 343 B.R. 754, 758 (Bankr. E.D. Pa. 2006). Once established that "something of value" has been obtained by fraud, any debt arising therefrom is excepted from discharge. *Id.* Here, the Plaintiffs have failed to demonstrate (1) what money, property, services, or credit the Debtor obtained by tendering the Checks or (2) how the Debt arose from the Debtor tendering the Checks. The Debt arose from the Agreement, which preceded the Checks. Accordingly, the

¶2; Tr. of Trial 8:18-24. The Debtor argues that he intended to make the payments under the

Agreement and that, but for his gambling addiction, he would have made the payments. Tr. of

Trial 35:10-19. Furthermore, he asserts that his gambling winnings were deposited into the

Account to ensure that the Checks were honored. Tr. of Trial 41:7-20.

Ultimately, because the Plaintiffs failed to prove that the Debtor signed the Agreement

with no intention of complying or in reckless disregard for whether he could comply, the Court

concludes that the Debt is dischargeable.

### A.  11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) provides that:

> a discharge...under this title does not discharge an individual debtor from any
> debt...for money, property, services, or an extension, renewal, or refinancing of
> credit, to the extent obtained by false pretenses, a false representation, or actual
> fraud, other than a statement respecting the debtor's or an insider's financial
> condition…

Courts have generally recognized that the denial of the debtor's discharge is a harsh sanction.

*See In re Gioioso,* 979 F.2d 956, 962 (3d Cir.1992); *Carto v. Oakley (In re Oakley),* 503 B.R.

407, 423 (Bankr. E.D. Pa. 2013), *aff'd,* 530 B.R. 251 (E.D. Pa. 2015); *(Panda Herbal Int'l Inc. v.*

*Luby (In re Luby),* 438 B.R. 817, 826 (Bankr. E.D. Pa. 2010). Consistent with the "fresh start"

policy underlying the Bankruptcy Code, the provisions of § 523(a) are generally "strictly

construed against creditors and liberally construed in favor of debtors." *In re Gallagher*, Case

No.: 13-26584-ABA, Adv. No.: 14-01236-ABA, 2016 WL 4989942, at *2 (quoting *Ins. Co. of*

*N. Am. v. Cohn (In re Cohn),* 54 F.3d 1108, 1113 (3d Cir. 1995)). In nondischargeability actions

brought pursuant to § 523(a)(2)(A), the plaintiff bears the burden of proving the elements

necessary to sustain a § 523(a)(2)(A) claim by a preponderance of the evidence. *Grogan v.*

---

Court will evaluate the nondischargeability of the Debt based upon whether the Debtor induced the Plaintiffs into the
Agreement by fraudulent conduct.

*Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Oppenheimer & Co. v.*

*Ricker (In re Ricker),* 475 B.R. 445, 455 (Bankr. E.D. Pa. 2012).

 As a threshold matter, the plain language of § 523(a)(2)(A) requires that "something of

value" be transferred to the debtor to sustain a claim. *Fledderman v. Glunk (In re Glunk),* 343

B.R. 754, 758 (Bankr. E.D. Pa. 2006). Once it is established that specific money, property,

services, or an extension, renewal, or refinancing of credit has been obtained by fraud, any debt

arising therefrom is excepted from discharge. *Id.* "Frauds that do not involve the transfer of

money, property, services, or an extension, renewal, or refinancing of credit are not included

within this discharge exception." *Symonies v. Sobol (In re Sobol),* 545 B.R. 477, 492 (Bankr.

M.D. Pa. 2016).

 A § 523(a)(2)(A) claim based on a false representation requires proof that the debtor

made a false or misleading affirmative misrepresentation with the intention and purpose of

deceiving the creditor. *Green v. Didio,* 607 B.R. 804, 816 (Bankr. E.D. Pa. 2019). To make out a

prima facie case of false representation under § 523(a)(2)(A), the plaintiff must demonstrate that:

(1) the debtor made a false representation; (2) which at the time of the representation, the debtor

knew, or believed, was false; (3) the false representation was made with the intent and purpose

of deceiving the creditor; (4) the creditor justifiably relied upon the representation; and (5) the

creditor sustained damages as a proximate result of the misrepresentation. *Green,* 607 B.R. at

816; *Jou v. Adalian (In re Adalian),* 474 B.R. 150, 160 (Bankr. M.D. Pa. 2012).

 While false representations require express statements, a false pretense "requires proof of

an implied misrepresentation promoted knowingly and willingly that creates a misleading

understanding of the transaction by the plaintiff" and which wrongfully induces the plaintiff to

advance money, property, services, or an extension, renewal, or refinancing of credit to the

debtor. *In re Oakley,* 503 B.R. at 432; *L.L. Lifestyle, Inc. v. Vidal (In re Vidal),* Bankr. No. 10-

14071, Adv. No. 10-0335, 2012 WL 3907847, at *15-16 (Bankr. E.D. Pa. Sept. 7, 2012).

B.  **The Forbearance Provision in the Agreement Constitutes an "Extension" or "Refinancing" of Credit Under § 523(a)(2)(A).**

In order for this Court to find the Debt nondischargeable pursuant to § 523(a)(2)(A), it

must first determine whether Plaintiffs' release of the Debtor from the $146,500.00 judgment in

exchange for $60,000.00 per the Forbearance Provision constitutes an extension or refinancing

of credit.

Courts are divided on whether forbearance constitutes an extension of credit under 11

U.S.C. § 523(a)(2)(A). A majority have held that a fraudulently induced forbearance may

constitute an "extension of credit" pursuant to § 523(a)(2), reasoning that a delay in demanding

payment on an existing debt or an indulgence giving the debtor more time to pay on an existing

debt fits squarely within the Black's Law Dictionary definition of extension as "[t]he

continuation of the same contract for a specified period of time," or "[a] period of additional

time to take action, make a decision, accept an offer, or complete a task." *E.g., Ojeda v.

Goldberg,* 599 F.3d 712, 719 (7th Cir.2010) ("We think it is abundantly clear that a fraudulently

induced forbearance fits squarely within [the definitions of "extension" or "renewal"], and note

that other circuits have reached the same conclusion"); *Field v. Mans,* 157 F.3d 35 (1st Cir.

1998) ("by deceiving the [plaintiffs] into continuing a credit arrangement they... had the right to

terminate, the [debtor's] fraud related to what can properly be called 'an extension of credit'");

*In re Gerlach,* 897 F.2d 1048, 1050 (10th Cir.1990) ("[a]n extension, within the meaning of

§523(a)(2), is 'an indulgence by a creditor giving his debtor further time to pay an existing

debt'"); *Nat'l City Bank v. Plechaty (In re Plechaty),* 213 B.R. 119, 125–126 (6th Cir. BAP

1991) (creditor's delay in demanding payment was an extension of credit under § 523(a)(2));

*Giansante & Cobb, LLC v. Singh (In re Singh),* 433 B.R. 139, 162 n.27 (Bankr. E.D. Pa. 2010);

*Freer v. Beetler (In re Beetler)*, 368 B.R. 720, 730 (Bankr. C.D. Ill. 2007) (fraudulently induced

forbearance may constitute an extension of credit for purposes of § 523(a)(2)(A)); *Int'l Fidelity

Ins. Co. v. Baxter (In re Baxter)*, 294 B.R. 800, 807 (Bankr. M.D. Ga. 2003) (in concealing true

financial situation to induce Plaintiff not to act on its contractual rights to call a bond, debtor

received an extension of credit); *Theo Walter Co. Inc. v. Nathan (In re Nathan)*, Bankr. No.

92–11415–BKC–RAM, Adv. No. 92–0572–BKC–RAM–A, 1993 WL 300054, at *4 (Bankr.

S.D. Fla. June 23, 1993) ("an extension of credit under § 523(a)(2) is 'an indulgence by a

creditor giving his debtor further time to pay an existing debt'"); *In re Chapman*, No. 91 C 6001,

1991 WL 247602, at *3–4 (Bankr. N.D. Ill. Nov. 18, 1991) (forbearance is "akin to an extension

of credit" pursuant to § 523(a)(2)).

Similarly, other courts have determined a forbearance constitutes a "refinancing" of

credit on the basis that the term "refinancing" is extensive and includes *any* change in the

Debtor's obligation which amounts to substituting a new debt obligation for an existing one.

*Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 133 (4th Cir. 1999); *Smith v. Johnson-

Battle (In re Johnson-Battle),* 599 B.R. 769, 785 (Bankr. D.N.J. 2019) (finding a settlement

agreement which was akin to a novation constitutes a refinancing); *Bank of Chester Cty. v. Price

(In re Price),* Nos. 93-15506DAS, 93-0947DAS, 93-15707DAS, 94-0013DAS, 1994 Bankr.

LEXIS 2395, at *13 (Bankr. E.D. Pa. Apr. 12, 1994) (quoting *In re Eberle*, 61 B.R. 638, 641

(Bankr. D. Minn. 1985)) (forbearance is sufficient to constitute a "renewal" or "refinance"

within the meaning of § 523(a)(2)(A)); *In re Regency Tower Assocs. No. 2, L.P.*, Bankr. No. 92-

12871DAS, 1993 Bankr. LEXIS 2337 (Bankr. E.D. Pa. Nov. 15, 1993). *See also In re Eberle*, 61

B.R. 638, 645 (Bankr. D. Minn. 1985).

However, a minority of courts have concluded that forbearance does not constitute an "extension of credit" under § 523(a)(2), primarily reasoning that § 523(a)(2) only contemplates extensions of credit that legally result in a debt or the actual extension of additional funds. *Lincoln Fin. Advisors Corp. v. Urbealis (In re Urbealis),* Nos. 13-33201, 14-1080 (CMG), 2017 Bankr. LEXIS 1132, at *2 (Bankr. D.N.J. Apr. 24, 2017) (finding a debtor "cannot be denied a discharge for the amount of the [s]ettlement [a]greement because no additional funds or credit were extended to the debtor through the agreement itself"); *Telmark, LLC v. Booher (In re Booher)*, 284 B.R. 191, 202–203 (Bankr. W.D. Pa. 2002) (finding mere forbearance from the exercise of an acceleration right, without more, does not constitute an extension of credit). *See also Gore v. Kressner (In re Kressner)*, 206 B.R. 303, 311 (Bankr. S.D. N.Y. 1997) (forbearing collection activity does not constitute an extension of credit), *subsequently aff'd*, 152 F.3d 919 (2d Cir.1998); *In re Bacher,* 47 B.R. 825, 829 (Bankr. E.D. Pa. 1985) ("[f]orbearing collection efforts does not constitute an extension of credit within the meaning of § 523(a)(2)(A)"). *Cf. Cement Nat'l Bank v. Colasante (In re Colasante),* 12 B.R. 635, 638 (E.D. Pa. 1981) (same result under predecessor provision of the Bankruptcy Act).

The Court is persuaded by the reasoning of the majority view, which considers a forbearance agreement to be an "extension" or "refinancing" of credit under § 523(a)(2). In particular, the Court agrees with the Tenth Circuit's decision in, *In re Gerlach,* 897 F.2d 1048 (10th Cir. 1990), which found that because "[a]n extension, within the meaning of § 523(a)(2), is "'an indulgence by a creditor giving his debtor further time to pay an existing debt,'" the Bankruptcy Code protects a creditor "who is deceived into forbearing from collection without being given an opportunity to grant or deny the extension of credit." *In re Gerlach,* 897 F.2d at 1050 (quoting *Takeuchi Mfg. (U.S.), Ltd. v. Fields (In re Fields),* 44 B.R. 322, 329 (Bankr. S.D.

Fla. 1984)). Similarly, the Court is persuaded by the Fourth Circuit's decision in, *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126 (4th Cir. 1999), finding that a forbearance which substitutes a new obligation for an existing one constitutes a refinancing of credit. *In re Biondo*, 180 F.3d at 133. Ultimately, a debtor should not be permitted to benefit from overly narrow definitions of the terms "extension" or "refinancing" which are entirely disconnected from the statute that informs their meaning. *See Hillsman v. Escoto (In re Escoto)*, No. NV-14-1358-KuDJu, 2015 Bankr. LEXIS 1665, at *20-22 (B.A.P. 9th Cir. May 15, 2015) ("'[i]t is no great leap to say that fraudulent concealment and frustration of [plaintiff's] acceleration right was tantamount to an 'extension'... of the existing credit.'")) (internal citation omitted). "To hold otherwise, would create a perverse incentive for insolvent debtors to lie to creditors to get them to forbear collection of past due indebtedness and would remove the primary legal incentive for fair dealing namely, nondischargeability in bankruptcy when a contract is induced by fraud." *Wolf v. Campbell (In re Campbell)*, 159 F.3d 963, 964 (6th Cir. 1998). Accordingly, the Court joins its sister courts in holding that a forbearance agreement may constitute an extension or refinancing of credit for purposes of § 523(a)(2).

In light of the foregoing, because the Agreement's Forbearance Provision amounts to an indulgence giving the Debtor ten additional years to pay his obligation to the Plaintiffs, thus extending the debtor-creditor relationship, it fits squarely within the definition of "extension" promoted by the majority view for purposes of § 523(a)(2). Furthermore, because the Forbearance Provision of the Agreement significantly changed the Debtor's obligation to the Plaintiffs, substituting the existing $146,500.00 judgment for a $60,000.00 obligation, it would also constitute a refinancing of credit for purposes of § 523(a)(2).

## C.  Intent to Deceive Under 11 U.S.C. § 523(a)(2)(A)

As previously mentioned, to sustain a § 523(a)(2)(A) claim, the plaintiff has the burden of proving by a preponderance of the evidence that the debtor acted with the intent and purpose of deceiving the creditor. *In re Adalian*, 474 B.R. at 160; *Stevens v. Antonius (In re Antonius)*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006). Because a debtor "will rarely, if ever, admit that deception was his purpose," intent to deceive may be inferred from the totality of the surrounding facts and circumstances. *Starr v. Reynolds (In re Reynolds)*, 193 B.R. 195, 200 (D. N.J. 1996). *See also Fulton N.A. v. Robbins (In re Robbins)*, 562 B.R. 83, 109 (Bankr. E.D. Pa. 2016); *N.J. DOL & Workforce Dev., Div. of Unemployment & Disability Ins. v. Ortiz (In re Ortiz)*, 514 B.R. 762, 768 (Bankr. D. N.J. 2014) (citing *In re Cohn*, 54 F.3d at 1118–19); *In re Singh*, 433 B.R. at 161; *Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008).

Courts may also infer intent to deceive from a debtor's reckless disregard for the truth. *In re Bocchino*, 794 F.3d 376, 380-82 (3d Cir. 2015); *Boyuka v. White (In re White)*, 128 Fed. Appx. 994, 998–99 (4th Cir. 2005) ("A showing of reckless indifference to the truth is sufficient to demonstrate the requisite intent to deceive."); *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir. 1998) (requiring proof that "the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth"); *Mayer v. Spanel Int'l, Ltd.*, 51 F.3d 670, 673–75 (7th Cir. 1995) ("[A] creditor must prove that the debtor obtained the money through representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation."); *In re Cohn*, 54 F.3d at 1119; *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 373 (5th Cir. 2005) (quoting *In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995)); *In re Ortiz*, 514 B.R. at 768. "Reckless indifference to the truth is

sufficient to prove the requisite intent to deceive…Thus a reckless disregard for the truth of a statement will fulfill both the knowledge element and the intent to deceive element." *De La Cruz v. Cohen (In re Cohen)*, 185 B.R. 171, 177-78 (Bankr. D.N.J. 1994). Ultimately, "where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *In re Giquinto,* 388 B.R. at 166. In fact, the Third Circuit found a debtor's reckless disregard for the truth of his representations to creditors satisfied § 523(a)(2)(A)'s requisite intent to deceive when with some due diligence, he should have known his statements were false. *See In re Bocchino,* 794 F.3d at 379-82.

### D. The Debtor Did Not Enter the Agreement Intending to Deceive the Plaintiff Nor with Reckless Disregard for His Ability to Comply with Its Terms.

Ultimately, the Court must evaluate whether the Debtor executed the Agreement intending to deceive the Plaintiffs. It is well established that a failure to perform as promised, by itself, merely gives rise to a cause of action for breach of contract, not actionable misrepresentation, fraud, or false pretenses under § 523(a)(2)(A). *In re Giquinto*, 388 B.R. at 166. Otherwise, almost all debts resulting from the failure to comply with a contract would be sufficient to establish nondischargeability, a result § 523(a)(2)(A) was not intended to create. *Id.* Instead, to find that the Debtor acted with the requisite intent to deceive, the Court must conclude that at the time the Debtor executed the Agreement, the Debtor never intended to comply with the contractual terms or acted with reckless disregard for whether he could comply with those terms. *See In re Bocchino,* 794 F.3d at 379-82. Consistent with the Third Circuit in, *In re Bocchino,* 794 F.3d 376 (3d Cir. 2015), the Debtor will have acted with recklessness sufficient to satisfy the requisite intent to deceive if the Debtor should have known at the time he entered the Agreement that he had no ability to make the required payments.

13

Based upon the circumstantial evidence presented, the Court finds that the Plaintiffs have not demonstrated that the Debtor intended to deceive them when he signed the Agreement or that he should have known that he could not satisfy the terms of the Agreement. First, the Debtor, who was forthcoming about his gambling addiction, consistently testified that at the time he entered into the Agreement, he intended to pay the Debt with his gambling winnings. In fact, within a short period after signing the Agreement, his gambling winnings and other deposits into the Account amounted to over $50,000, substantiating his belief that he could have made the initial $5,000 payment. Furthermore, for four years he had made monthly interest payments to the Plaintiffs of $1,700, further demonstrating the reasonableness of his belief that he could satisfy the Agreement's terms which required much lower monthly payments following the initial $5,000 payment. Finally, not only were there five days between July 5 and August 28 when the Initial Check could have been honored, but *thirty-nine* days when the Second Check could have been honored. If the Debtor had never intended to make payments under the Agreement, the Debtor would have never risked having sufficient funds in the Account to make any payments or he would have written the Checks from an account with a zero balance. Moreover, the Court cannot find that he should have known he could not comply with the Agreement especially when there were far more days than not that the Second Check could have been honored. Accordingly, as demonstrated by the Debtor's testimony, his substantial gambling winnings and deposits, and his record of making monthly interest payments of over $1,000 for four years, the Court concludes that the Debtor intended to make payments under the Agreement from his gambling winnings, believed he could do so, and should not have known at the outset that he would be unable to satisfy the terms. While his belief in his ability to pay may have defied the odds given his gambling addiction, it does not support the Plaintiffs' conclusion that

the Debtor never intended at the time he signed the Agreement to comply with its terms.

*Tropicana Casino & Resort v. August (In re August),* 448 B.R. 331, 355 (Bankr. E.D. Pa. 2011)

("So long as the debtor has an honest, even if unreasonable belief, that he will get lucky at

gambling and pay off his debts this Court is satisfied that the debtor has the requisite intent to

pay.") (internal citation omitted).

Therefore, the Court holds that Plaintiffs did not meet their evidentiary burden to

establish the Debtor had the requisite intent necessary to satisfy a section 523(a)(2)(A) claim.

## I.    CONCLUSION

Based on the foregoing, the Court finds that the Debt is dischargeable.

Date: January 21, 2021                     _____
                                           Honorable Ashely M. Chan
                                           United States Bankruptcy Judge